IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRACEY M. TOOLEY, )
 )
      Plaintiff, )
 )
      v. ) No. 13 C 3520
 )
 ) Magistrate Judge
CAROLYN W. COLVIN,[1] ) Jeffrey T. Gilbert
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
 )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Claimant Tracey M. Tooley ("Claimant") brings this action under 42 U.S.C. § 405(g) seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. ECF No. 15.

This matter is before the Court on the parties' cross-motions for summary judgment. ECF Nos. 26, 33. For the reasons discussed herein, the Commissioner's motion for summary judgment (ECF No. 33) is denied. Claimant's motion for summary judgment (ECF No. 26) is granted, and this matter is remanded to the Social Security Administration ("SSA") for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Claimant first filed an application for disability insurance benefits on December 5, 2008, alleging a disability onset date beginning September 29, 2007. R. 125. The SSA initially denied the application on July 30, 2009, and upon reconsideration on December 23, 2009. *Id.* Claimant then requested a hearing before an administrative law judge ("ALJ"), which was held on July 10, 2010. *Id.* On September 23, 2010, the ALJ issued a written decision, finding Claimant not disabled under the Social Security Act. *Id.* at 122-142. Claimant appealed the ALJ's decision to the District Court pursuant to 42 U.S.C. § 405(g). Magistrate Judge Cox affirmed the ALJ's decision and declined to remand the case to the SSA. *Tooley v. Astrue*, 2013 WL 2449912 (N.D. Ill. Jun. 4, 2013).

While Claimant's disability application was pending at the District Court, Claimant filed a new application for disability insurance benefits on March 7, 2011, as well as an application for supplemental security income on April 7, 2011. R. 16. In both applications, Claimant alleged a disability onset date beginning December 5, 2008. *Id.* The SSA initially denied the applications on July 1, 2011, and upon reconsideration on October 14, 2011. *Id.* Claimant filed a timely request for a hearing on November 30, 2011, which was held before an ALJ on June 7, 2012. *Id.* Claimant personally appeared and testified at the hearing, and she was represented by counsel. *Id.* A medical expert and a vocational expert also appeared and testified at the hearing. *Id.* Prior to any testimony, Claimant requested to amend her alleged onset date to September 24, 2010 – the day after the first ALJ issued an unfavorable decision in Claimant's original application for disability benefits – "for the purposes of not encroaching on" that decision. *Id.* at 48. The ALJ accepted Claimant's new alleged onset date. *Id.* at 16.

The ALJ issued a written decision on November 9, 2012, finding Claimant not disabled under the Social Security Act. *Id.* at 13-38. At step one of the required five-step sequential evaluation process, the ALJ found that Claimant had not engaged in substantial gainful activity since her amended onset date of September 24, 2010. *Id.* at 18. At step two, the ALJ found that Claimant had the severe impairments of degenerative changes to her right shoulder, bilateral knee pain, obesity, affective disorder, personality disorder, and history of alcohol abuse. *Id.* At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id.* at 19.

Prior to reaching step four of the sequential evaluation process, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations including, among other things, that Claimant could stand and/or walk for about six hours in an eight-hour workday. *Id.* at 24-25. At step four, the ALJ found that Claimant was unable to perform any past relevant work. *Id.* at 29. At step five, the ALJ found that there were jobs existing in significant numbers in the national economy that Claimant could perform, and therefore found that Claimant was not disabled under the Social Security Act. *Id.* at 30.

The Social Security Appeals Council denied Claimant's request for review on March 13, 2013, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-5. Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

3

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). When an ALJ recommends a denial of benefits, he or she must "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). In other words, while the ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881. 889 (7th Cir. 2001). At a minimum, the ALJ must articulate his analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

## III. ANALYSIS

Claimant presents a number of arguments in support of reversal or remand, most of which the Court finds unpersuasive. However, the Court agrees with Claimant that there is an internal inconsistency in the ALJ's RFC determination. In light of that error, the Court has no choice but to remand the case to the SSA for further explanation.

### 1. The ALJ did not build a logical bridge from the evidence to her conclusion in determining Claimant's RFC.

Claimant alleges that a number of mental and physical impairments prevent her from working, including personality disorder, depression, anxiety, bipolar disorder, degenerative changes in her right shoulder, knee pain, headaches, fibromyalgia, and obesity. Although

4

Claimant's attorney heavily emphasized her mental impairments at the administrative hearing, at this point, the most relevant issue before the Court is Claimant's obesity.

At the time of the hearing, Claimant was 5'8" tall and weighed 321 pounds, corresponding to a body mass index of 48.8 and placing Claimant within the "morbid obesity" range. R. 21. Claimant testified that she had gained 100 pounds over the two years preceding the hearing. *Id.* at 76. The ALJ correctly acknowledged that, while obesity is no longer a listed impairment in Appendix 1, she was still required to consider whether Claimant's obesity exacerbates any of her symptoms or limitations. *Id.* at 21; *Villano*, 556 F.3d at 562 (citing *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004)). With that in mind, the ALJ determined that, despite a lack of medical evidence suggesting Claimant would have difficulty standing or walking, it was "not unreasonable to expect [Claimant's] extreme obesity would impose sufficient stress upon her knees and lower back that she could not stand or walk for an entire eight-hour workday." R. 28. Thus, the ALJ concluded, Claimant's obesity, compounded with her other physical ailments, prevented her from standing and/or walking for more than six hours per day. *Id.* at 24-25.

The problem with the ALJ's reasoning here is that it is internally inconsistent with another aspect of her opinion – namely, her decision to afford the findings of State Agency medical consultant Dr. Charles Wabner no weight. In June 2011, Dr. Wabner proffered an opinion to the SSA detailing what he believed to be Claimant's physical capabilities. *Id.* at 785-92. He explicitly addressed Claimant's ability to stand and/or walk during an eight-hour workday and reached the very same conclusion the ALJ reached: Claimant would be able to do so for no more than six hours per day. *Id.* at 786. The ALJ, however, gave no weight to Dr. Wabner's opinion because the "evidence received at the hearing level showed the claimant was

5

more limited than [Dr. Wabner] had assessed." *Id.* at 29. Specifically, the ALJ found that "it does not appear that [Dr. Wabner] adequately considered the effect of the claimant's obesity . . . on her ability to walk or stand." *Id.*

It is inconsistent for the ALJ to determine that Dr. Wabner did not adequately account for the impact of Claimant's obesity on her ability to stand or walk, and then reach the exact same conclusion as Dr. Wabner after allegedly accounting for Claimant's obesity in her own calculation of Claimant's RFC. The ALJ rejected Dr. Wabner's assessment that Claimant's obesity would allow her to stand for no more than six hours in an eight hour workday because, according to the ALJ, Claimant was more limited than that. The ALJ then concluded that Claimant could stand for six hours in an eight hour workday. In other words, since the ALJ found that certain evidence suggested Claimant's RFC was more limited than Dr. Wabner determined, it is irreconcilable for the ALJ to then reach the same conclusion as Dr. Wabner after allegedly considering that additional evidence. The Commissioner does not address this discrepancy and instead argues that the ALJ's RFC determination is supported by substantial evidence. ECF No. 34 at 6-7. That very well may be true, but the Court cannot affirm the ALJ's opinion in light of this inconsistency in her reasoning. The ALJ did not build a logical bridge from the evidence to her conclusion. Further explanation is needed. *See, e.g., Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (remanding where the ALJ did not explain how he arrived at his RFC conclusions).

## 2. Claimant's additional arguments.

Claimant raises a number of additional arguments in her brief, which the Court need not address here in detail in light of having already determined that remand is appropriate. Nevertheless, the Court finds it necessary to comment briefly on some of these arguments below.

6

For example, Claimant argues the ALJ had no basis for determining she was capable of sitting for six hours in an eight-hour workday. ECF No. 26 at 6. This argument is particularly puzzling, as Claimant herself testified that she has no problem sitting comfortably in a chair. R. 82.

Claimant argues that the ALJ improperly analyzed the medical opinion evidence because she rejected the July 2010 opinion of Ms. Drake, Claimant's therapist, without adequate explanation. ECF No. 26 at 16-18. As the Commissioner points out, this is the very same argument Claimant raised before Judge Cox when she unsuccessfully appealed her first denial of benefits. Judge Cox found this argument to be without merit because, as the first ALJ to hear Claimant's case explained, Ms. Drake met Claimant only four days prior to providing her assessment to the SSA and none of Claimant's medical records corroborate Ms. Drake's "extreme report." *Tooley*, 2013 WL 2449912 at *7. The same logic applies here as well.

Claimant next contends that the ALJ erred in evaluating her fibromyalgia, sleep apnea, and headaches. As the Commissioner points out, however, none of Claimant's treating physicians ever diagnosed her with fibromyalgia; rather, they merely mentioned it as a possible diagnosis. ECF No. 34 at 3-5. Absent an actual diagnosis, the ALJ was not required to evaluate Claimant's alleged fibromyalgia in accordance with SSR 12-2p. *See* SSR 12-2p ("We will find that a person has an MDI of FM *if the physician diagnosed FM . . .*") (emphasis added). Moreover, despite Claimant's complaints of excessive daytime sleepiness, a sleep study revealed that the "overall index is low" for sleep apnea, and Claimant's treating physician explicitly stated that Claimant "did not meet [the] criteria for sleep apnea. R. 847, 932. The ALJ properly cited this evidence when dismissing Claimant's sleep apnea complaints. R. 19. And, though Claimant argues the ALJ should have given more weight to her headache complaints, it is worth noting

that, following Claimant's amended alleged onset date, her medical records contain only two notations of headache complaints.

## IV. CONCLUSION

For the reasons set forth above, Claimant's Motion for Summary Judgment (ECF No. 26) is granted, and the Commissioner's Motion for Summary Judgment (ECF No. 33) is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 20, 2015